**Exhibit A**
**White Earth Band of Ojibwe Trial Court Complaint (Without Exhibits)**

**WHITE EARTH BAND OF OJIBWE**
**IN TRIBAL COURT**

MANOOMIN; THE WHITE EARTH
BAND OF OJIBWE; MICHAEL
FAIRBANKS; LEONARD 'ALAN' ROY;
RAYMOND AUGINAUSH; KATHY
GOODWIN; CHERYL 'ANNIE'
JACKSON; TODD JEREMY THOMPSON;
DAWN GOODWIN; NANCY BEAULIEU;
WINONA LADUKE; PATRICIA 'ALEX
GOLDEN-WOLF' OSUNA;  JUSTIN
KEEZER;  TANIA AUBID; SIMONE
SENOGLES; GINA (PELTIER) EELE;
TARA WIDNER; TARA HOUSKA;
JAMIE "JAIKE SPOTTED-WOLF"
WORTHINGTON and other tribal members
and Water Protectors similarly situated, and          Civil Case No. _____
SHANAI MATTESON and ALLEN
RICHARDSON invited non-Indian guests
and Water Protectors similarly situated,
                        Plaintiffs
**v.**

MINNESOTA DEPT of NATURAL                    **COMPLAINT**
RESOURCES (DNR); COMMISSIONER
SARAH STROMMEN; RANDALL                           for
DODEEN DNR, EWR CAR SECTION
MANAGER (Ecological and Water          Declaratory and Injunctive Relief
Resources Conservation Assistance and
Regulation Section Manager), and BARB
NARAMORE, DEPUTY
COMMISSIONER, DNR
CONSERVATION OFFICERS (arresting or
threatening tribal water protectors) JOHN
DOES? (1 -10),
                        Defendants.

_____

### *Introduction*

Manoomin (Wild Rice), *the food that grows on water*, is the most important

cultural and sacred food of the Chippewa, Ojibwe, Anishinabe peoples.  Manoomin has

been a part of our traditional stories, teachings, lifeways and spirituality since the earliest times to the present day.  For the Chippewa Manoomin is alive like all living creatures and they are our relations.  We Chippewa have a sacred covenant with Manoomin and the water (Nibi) and all living creatures, without which we cannot live.

*Manoomin's* story is revealed as part of our migration story and the *Seven Fires Prophecy* which tells of the westward migration from the Atlantic coast, through the Great Lakes to our current homelands and territories of the **Chippewas of the Mississippi**. Birch scroll maps show the waterways and portages of the route from old Fond du Lac to the homelands of the *Chippewas of the Mississippi* at Sandy Lake and Leech Lake.  At the center of the map is old Fond du Lac[1] (now Jay Cook state park) next to the major landmark peninsula now Park Point Duluth on Lake Superior.



For the Chippewa, Manoomin is a gift from the Creator and because of this spiritual connection and relationship with Manoomin the Chippewas expressly reserved the right

---

[1] Old Fond du Lac was originally located near the mouth of the now St. Louis River freshwater estuary of Lake Superior.  Old Fond du Lac is the meeting location of 1826 Ratification Treaty https://www.firstpeople.us/FP-Html-Treaties/TreatyWithTheChippewa1826.html (of 1825 Treaty) with the United States.  This is the site of a major Chippewa Indian settlement from the sixteenth through the nineteenth centuries and is situated on the early canoe route along the St. Louis River from Lake Superior to Lake Vermillion and the Upper Mississippi. See historical marker https://www.hmdb.org/m.asp?m=43723 The 1825 Treaty included a dozen tribes.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 2.

to gather *wild rice* in the 1837 Treaty[2] with the United States. Manoomin is our primary treaty food, along with fish and maple. From time immemorial the wild rice crop of the waters of the *now* states of Minnesota, Wisconsin and Canada has been a vital factor to the sustenance and the continued existence of the Indian race in the territory.[3]

> WILD RICE, OR MANOOMIN, IS CENTRAL TO OJIBWE CULTURAL IDENTITY, SPIRITUAL TRADITIONS, AND PHYSICAL WELL-BEING. IT IS AN IMPORTANT SPECIES TO THE ECOLOGY OF MINNESOTA'S LAKES AND RIVERS AND PROVIDES CRITICAL FOOD AND HABITAT TO BOTH ENDEMIC AND MIGRATORY SPECIES.[4]

Manoomin, fish and maple are the primary treaty foods of the Chippewa, all of which depends on clean, abundant fresh waters and which important and essential natural ecosystem resources have been under constant threat from Minnesota permitting agencies inability or unwillingness to protect or work with affected tribes.[5]

---

[2] See Article 5 of the 1837 treaty provides, "The privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers, and the lakes included in the territory ceded, is guarantied to the Indians, during the pleasure of the President of the United States." Treaty with the Chippewa, July 29, 1837, art. 5, 7 Stat. 536 ("1837 Treaty").
https://glifwc.org/TreatyRights/TreatyChippewa07291837Web.pdf
[3] See Minn. Stat. 84.09 Conservation of wild rice, adopted 1939, repealed 1996.
[4] See *The Food that Grows out of the Water, The Economic Benefits of Wild Rice in Minnesota*, Earth Economics 2018, by Angela Fletcher, Olivia Dooley, Johnny Mojica, and Jessie Martin, Executive Summary page 3. WQSWildRiceBenefits.pdf (fdlrez.com) (Thanks to all who supported this project: Nancy Schuldt and Thomas Howes of the *Fond du Lac Band of Lake Superior Chippewa*; James Thannum and Peter David of the *Great Lakes Indian Fish and Wildlife Commission*; Darren Vogt of the *1854 Treaty Authority*; Kathleen Williams of the *Environmental Protection Agency*; Kristin Raab of the *Minnesota Department of Health*; Maya Kocian, Cyrus Philbrick, Matt Chadsey, Ruby Ellis, and Marvin Termin of *Earth Economics*.)
[5] See The Wild Rice Mystique: Resource Management and American Indians' Rights as a Problem of Law and Culture, William Mitchell Law Review, Vol. 10, p. 743, 1984, by Charlene L. Smit, Washburn University - School of Law, and Howard J. Vogel, Hamline University -

*Manoomin et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 3.

In *U.S. v. Brown*[6], the Eighth Circuit re-affirmed that

> When seeking to determine the meaning of Indian treaties, "we look beyond the written words to the larger context that frames the Treaty, including the history of the treaty, the negotiations, and the practical construction adopted by the parties." Mille Lacs Band, 526 U.S. at 196 (quotation omitted). We interpret such treaties liberally, resolving uncertainties in favor of the Indians, and we "give effect to the terms as the Indians themselves would have understood them." Id. at 196, 200.

As such, the panel considered the Treaty Journals noting that

> In July 1837, over one thousand Chippewa Indians gathered at Fort Snelling while their chiefs negotiated with Wisconsin Territorial Governor Henry Dodge who represented the United States. Documents Related to the Negotiation of the Treaty of July 29, 1837, reprinted in Satz, Chippewa Treaty Rights 131-153, at 131 ("1837 Treaty Journal"). The United States sought to purchase land east of the Mississippi River in present day central Minnesota and Wisconsin because of its desirable pine timber. Id. at 131-32, 140.

> During these negotiations, the Chippewa chiefs emphasized the importance of reserving their rights to fish, hunt, and gather on the land, also called usufructuary rights. According to the treaty journal, *Ma-ghe-ga-bo* stated, "Of all the country that we grant to you we wish to hold on to a tree where we get our living, & to reserve the streams where we drink the waters that give us life." 1837 Treaty Journal at 142. The secretary who recorded the proceedings noted that he transcribed the statement as provided by the underqualified interpreters, but he "presume[d] it to mean that the Indians wish to reserve the privilege of hunting & fishing on the lands and making sugar from the Maple." Id.

---

School of Law (Abstract-This article posits that the current controversy concerning wild rice is best understood as a clash between the traditional Ojibway culture and the culture of the European settlers. It provides an extensive historical and scientific background for this thesis. In doing so it provides a critique of regulation of the wild rice harvest in the State of Minnesota and concludes with suggestions for improved wild rice resource management in Minnesota.) https://open.mitchellhamline.edu/wmlr/vol10/iss4/6/
[6] See https://turtletalk.files.wordpress.com/2016/09/8th-circuit-opinion-upheld-square-hook-chippewa-treaty-rights-2-10-2015.pdf  *U.S. v Brown et al.*

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 4.

And the Minnesota District Court for *U.S. v Brown*[7] considered the same Treaty Journals

and cited

> Chippewa leader **Hole in the Day** stated: "My father, in all the country we sell you, we wish to hold on to that which gives us life – the streams and lakes where we fish, and the trees from which we make sugar." Henry Dodge, Proceedings of a Council with the Chippewa Indians, 9 Iowa J. Hist. & Pol. 408, 424 (1911). Governor Henry Dodge of Wisconsin Territory, which in 1837 included all of the future State of Minnesota, later responded that "I will agree that you shall have the free use of the rivers and the privilege of hunting on the lands you are to sell, during the pleasure of your great father." Id. at 427. Another Chippewa leader, **Flat Mouth**, a chief from Leech Lake, stated:
>> Your children are willing to let you have their lands, but wish to reserve the privilege of making sugar from the trees, and getting their living from the lakes and rivers as they have heretofore done, and of remaining in the country. It is hard to give up the land. It will remain and cannot be destroyed, but you may cut down the trees, and others will grow up. You know we cannot live deprived of lakes and rivers.
>
> Id. at 428. Governor Dodge responded to this: "My friends, I have listened with great attention to your chiefs from Leech Lake. I will make known to your great father your request to be permitted to make sugar on the lands, and you will be allowed during his pleasure to hunt and fish on them." Id. at 429.

Here, the Treaty Journals reveal our Chippewa understandings about usufructuary

property rights across all the lands and waters being ceded and yet to be ceded[8] and held

*in common* by the Chippewas of the Mississippi and Lake Superior, as described in the

---

[7] See MEMORANDUM OPINON AND ORDER REJECTING THE REPORTS AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE, 11/25/2013, *U.S. v. Brown* Criminal No. 13-68 (JRT/LIB), https://anishinaabeperspectives.weebly.com/blog/us-court-decision-regarding-leech-lake-usufructuary-treaty-rights Similar decisions dismissing Chippewa at Red Lake and White Earth Netters after Operation SquareHook fiasco by DNR charging on and off reservation Indians (with U.S. Fish & Wildlife) for selling fish on and off reservations.
[8] See https://scholarship.law.umn.edu/cgi/viewcontent.cgi?article=1222&context=lawineq
*Minnesota v. Mille Lacs Band of Chippewa: 19th Century U.S., Treaty Guaranteed Usufructuary Property Rights, the Foundation for 21st Century Indigenous Sovereignty*, by Peter Erlinder. June 2015, Minnesota Journal of Law & Inequality, Volume 33 Issue 1 Article 3.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 5.

1842 Treaty with the Chippewa[9].  Chippewa treaty-reserved usufructuary property rights are exclusive[10] from the State of Minnesota and the United States, and thus requires consent from the Chippewa.

The White Earth Band of Ojibwe together with the Minnesota Chippewa Tribe (MCT) and Honor the Earth[11] developed the *Anishinabe Cumulative Impact Assessment* (ACIA)[12] in 2018 (and e-filed the entire ACIA onto the Minnesota Public Utilities Commission's Line 3 e-docket)[13] as part of the PUC's Environmental Impact Statement (EIS) for Line 3 tar sands, crude oil pipeline.  The ACIA agrees with the United States, the other party to 44 treaties with Chippewa, that *climate change* is our biggest national security threat explaining in 2014 that

> The responsibility of the Department of Defense is the security of our country. That requires thinking ahead and planning for a wide range of contingencies.
>
> Among the future trends that will impact our national security is climate change. Rising global temperatures, changing precipitation patterns, climbing sea levels, and more extreme weather events will intensify the challenges of global instability, hunger, poverty, and conflict. They will likely lead to food and water shortages, pandemic disease, disputes over

---

[9] See https://glifwc.org/TreatyRights/TreatyChippewa10041842Web.pdf
[10] See *U.S. v Brown* (Mn Dist) FN 7, citing *U.S. v Dion* "As a general matter, 'Indians enjoy exclusive treaty rights to hunt and fish on lands reserved to them, unless such rights were clearly relinquished by treaty or have been modified by Congress.' *Dion,* 476 U.S. at 738. These fishing rights are held individually by Defendants, as treaty rights can be asserted by individual tribe members." *Id.* at 738 n.4.
[11] See https://www.honorearth.org/ a native-led environmental organization based on White Earth Reservation
[12] https://www.mnchippewatribe.org/impact_assessment.html
[13] See PUC e-docket Feb. 26, 2018 for Enbridge 15-137 Line 3, see ten (10) documents 20182-140455-01 through 20182-140455-10.
https://www.edockets.state.mn.us/EFiling/edockets/searchDocuments.do?method=showPoup&documentId={9080D261-0000-CB10-9584-1E2E901BC5B7}&documentTitle=20182-140455-01

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 6.

refugees and resources, and destruction by natural disasters in regions across the globe.

In our defense strategy, we refer to climate change as a "threat multiplier" because it has the potential to exacerbate many of the challenges we are dealing with today – from infectious disease to terrorism. We are already beginning to see some of these impacts.

See **Department of Defense FY 2014 Climate Change Adaptation Roadmap**.[14] Today, all of the possible impacts described in the 2014 DOD report above are already reality and happening in the state of Minnesota, the U.S. and the World.

Most recently, the Minnesota Department of Natural Resources (DNR) has abruptly, unilaterally and without formal notice to tribal leaders (quasi-secretly), *and without Chippewa consent*, granted Enbridge Line 3 project an increase of approximately 5 billion gallons of public ground and surface water, for horizontal drilling under rivers and other waterways of the upper Mississippi watershed.  The Band and other Chippewas have been attempting to protect Manoomin and our fresh water resources by engaging, albeit unsuccessfully, in direct dialog with DNR to rescind the 5B water permit, and by establishing treaty camps for Water Protectors.  Chippewa Water Protectors have been arrested and charged for *trespass* under state criminalization of civil rights and laws, for defending our usufructuary properties and fresh clean waters to support the *Rights of*

---

[14] See Department of Defense FY 2014 Climate Change Adaptation Roadmap  prepared under DOD Secretary Hagel, https://www.acq.osd.mil/eie/Downloads/CCARprint_wForward_e.pdf

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 7.

*Manoomin* and for all living creatures whose lives depend on an abundant quantity of

clean pristine high quality, fresh water resources.[15]

"We trust the United States Forest Service to 'speak for the trees, for the trees

have no tongues.' Dr. Seuss, The Lorax (1971)."[16]  In 2018, in a *slightly* different

petroleum pipeline story a Fourth Circuit federal court judge noted that

> A thorough review of the record leads to the necessary conclusion that the
> Forest Service abdicated its responsibility to preserve national forest
> resources. This conclusion is particularly informed by the Forest Service's
> serious environmental concerns that were suddenly, and mysteriously,
> ***assuaged in time to meet a private pipeline company's deadlines.***

(Emphasis added).

Here and now, it's the DNR abdicating its responsibilities to the public's interest,

suddenly and mysteriously, and the DNR is failing to protect freshwater resources for

Manoomin and the rest of Nature's creations, with callous disregard for the Rights of

---

[15] See *White Earth Nation and 1855 Treaty Authority Pass Laws to Protect the "Rights of Manoomin"* Jan. 14, 2019 https://www.stopline3.org/news/rightsofmanoomin

[16] See *Sierra Club et al v U.S. Forest Service et al, Atlantic Coast Pipeline, LLC, Intervenor*, (4th Cir. No. 18-1144) On Petition for Review of a Decision of the United States Forest Service order by the Honorable Circuit Judge Thacker:  See USCA4 Appeal: 18-1144 Doc: 104 Filed: 12/13/2018 Pg: 60 of 60, Part IV, Petition for Review Granted, Vacated and Remanded. https://www.southernenvironment.org/uploads/words_docs/ACP_USFS_opinion.pdf (We trust the United States Forest Service to "speak for the trees, for the trees have no tongues." Dr. Seuss, The Lorax (1971).  A thorough review of the record leads to the necessary conclusion that the Forest Service abdicated its responsibility to preserve national forest resources. This conclusion is particularly informed by the Forest Service's serious environmental concerns that were suddenly, and mysteriously, assuaged in time to meet a private pipeline company's deadlines. Accordingly, for the reasons set forth herein, we grant the petition to review the Forest Service's Record of Decision and Special Use Permit, vacate the Forest Service's decisions, and remand to the Forest Service for proceedings consistent with this opinion.)

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 8.

Nature[17], Rights of Manoomin and Rights of the Chippewas reserved by a series of 44

Treaties with the United States, simply to enable and facilitate climate change threats for

a different, foreign, tar sands crude oil pipeline called Line 3 Replacement.[18]  DNR state

oppression, and imperialism fosters and enforces cultural genocide in Minnesota.[19]

The Chippewas have pre-existing usufructuary and water property rights that have

been intentionally and systematically ignored and suppressed by the state and particularly

the DNR with other law enforcement for profit.[20]  The 2020 Minnesota Legislature has

*severely criminalized* citizens' civil rights to travel, the right to assemble, free speech and

other civil remedies used to defend public and private property rights and interests.  DNR

and local law enforcement are violating Chippewa federally protected civil rights of

Water Protectors at Shell River[21], Giniw[22], Firelight[23], Treaty People Gathering[24],

---

[17] See *Global Alliance for the Right of Nature* https://www.therightsofnature.org/ and see also
*Center for Environmental and Democratic Rights* https://www.centerforenvironmentalrights.org/
[18] See *On Nature column: Pursuit of oil continues to destroy land, water. Song remains the
same!* By Eliot Reed, For The Herald Bulletin, Jul 31, 2021. (Today, more than 250 water
protectors and other protestors have been arrested. Former 1996 and 2000 Vice Presidential
candidate Winona LaDuke (Green Party) of the White Earth Ojibwe Nation was one of the water
protectors jailed.
Multinational companies continue their race for profits as the climate crisis relentlessly threatens
all of humanity. ***Regardless of whether Obama, Trump or Biden is president, the song remains
the same***.) https://www.heraldbulletin.com/opinion/columns/on-nature-column-pursuit-of-oil-
continues-to-destroy-land-water/article_fbf829f0-f08b-11eb-9c7e-6bd21fc94f7a.html
[19] See *'It's cultural genocide': inside the fight to stop a pipeline on tribal lands, The Line 3 route
traverses land that Native American pipeline opponents say is protected by US treaties with
Ojibwe nations*, by Sheila Regan in Minnesota https://www.theguardian.com/us-
news/2021/feb/19/line-3-pipeline-ojibwe-tribal-lands
[20] See *MN law enforcement has been paid nearly $1.7 M from Line 3 escrow account*
https://healingmnstories.wordpress.com/2021/08/03/mn-law-enforcement-has-been-paid-nearly-
1-7-m-from-line-3-escrow-account/
[21] See *Women arrested defending the Shell River*
https://mail.google.com/mail/u/0/?pli=1#inbox/FMfcgzGkZZwLCQGrzGkcBwddFjznPDvc?proj
ector=1

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 9.

Mississippi River Lodge[25], and Red Lake River[26] Treaty Camps[27] for Water Protectors.

Presently more than 700 arrests have been made by DNR and local law enforcement.

*Trespass* is civil regulatory in nature and more importantly *Prohibited Trespass* is

an existing offense in the 1855 Conservation Code[28] adopted by the White Earth Band in

2010.  Minnesota is infringing on Chippewa's civil rights, U.S. Constitutional rights,

treaty and reserved rights, by systematically using DNR Conservation Officers and state

law enforcement to protect the worst, climate change culprits to unjustly take excessive

amounts of surface and ground water, during a drought just before Manoomin harvest

---

[22] See *Blocking Machinery With Their Bodies: Inside The Fight Against An Oil Pipeline*, https://www.youtube.com/watch?v=JZTmXkW5VqI
[23] See *Firelight Action* https://www.youtube.com/watch?v=jVWJk8kM12E On 07/29/2021 Water Protectors blocked access to a water pump on the Mississippi River near the FIrelight Treaty Camp. Two were arrested and 4 were cited when the refused to move away from the pump.  See also *Bad Ass Grandma Arrest Firelight Camp* https://mail.google.com/mail/u/0/?pli=1#inbox/FMfcgzGkZZwLCQGZSnQChGCPkCbBltMP?projector=1
[24] See *Treaty People Gathering Action at the Headwaters of the Mississippi River* https://www.bing.com/videos/search?q=treaty+people+gathering+youtube&docid=608002047360921713&mid=A0C1E0C7305587C520A1A0C1E0C7305587C520A1&view=detail&FORM=VIRE
[25]  See *Taysha Martineau and Winona LaDuke at the lodge* https://www.youtube.com/watch?v=bk9b-2YuTTM
[26] See *UPDATE: Weekend Arrests At Pipeline Protest Camp By Thief River Falls, MN* https://mail.google.com/mail/u/0/?pli=1#inbox/FMfcgzGkZZwLCSVlvhMkGxpMTDszXKDt?projector=1
[27] See *Indigenous people in Minnesota arrested for protesting the Line 3 pipeline at Red Lake Treaty Camp* https://www.youtube.com/watch?v=g0P-k6uc4x4
[28] See WERBC Res. 057-10-008, adopted Conservation Code for the 1855 Ceded Territory Tribes.  The 1855 Conservation Code is nearly identical to the 1854 Conservation Code.  The 1854 Conservation Code includes the offense of *prohibited trespass*.  Minnesota already financially compensates the 1854 treaty bands, in excess of $15 Million per bi-annually to not exercise their off-reservation, commercial harvesting rights. See Minn. Stat. 97A.157, 1854 TREATY AREA AGREEMENT https://www.revisor.mn.gov/statutes/2019/cite/97A.157/pdf

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 10.

season. Meanwhile Enbridge is using militarized[29] security forces and is reportedly bringing in tankers of water from other, known and unknown, cross contaminating water sources to continue construction and drilling[30] day and night during the drought.

## COMPLAINT

This is an action for declaratory and injunctive relief by which Plaintiffs *Manoomin*, the White Earth Band of Ojibwe (the "Band") of the Minnesota Chippewa Tribe, on the White Earth Reservation, and individual Chippewa (and other tribes who are a party to the same 1825 and 1826 treaties) *Treaty Beneficiaries* and (members) and non-Indian Water Protectors *generally* seek declaratory and injunctive relief to:

a. *Declare* Manoomin, or wild rice, within all the Chippewa ceded territories is protected and possesses inherent rights to exist, flourish, regenerate, and evolve, as well as inherent rights to restoration, recovery, and preservation. These rights include, but are not limited to, the right to pure water and freshwater habitat; the right to a healthy climate system and a natural environment free from human-caused global warming impacts and emissions;

b. *Declare* that Plaintiff tribal members possess the individual legal rights to harvest manoomin, and protect and save manoomin seeds, and protect the waters that support Manoomin within the 1855 ceded territory and beyond, free of DNR interference and regulation.

c. *Declare* the Chippewa Plaintiffs as individual *Chippewas of the Mississippi* and the political successor, federally recognized tribal government of the

---

[29] See *Just Out of Jail, Winona LaDuke Decries Militarized Crackdown on Enbridge Line 3 Pipeline Protests*, DemocracyNow, https://www.youtube.com/watch?v=KRwjWJzwNls
[30] See *Drilling Fluid Used in Line 3 Construction Released Near Solway* Lakeland Public TV https://mail.google.com/mail/u/0/?pli=1#inbox/FMfcgzGkZZwLCWvRPnTXdtJkkvcBgPlg?projector=1

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 11.

White Earth Reservation have *recognized legal rights* to lands and waters that pre-date treaties and Minnesota statehood and are derived from the individually held, treaty reserved, usufructuary property rights necessary to support healthy ecosystems from which to provide on-going food security to hunt, fish, trap and gather; which rights are protected by U.S. Constitutional due process, as part of the supreme law of the land.

d.  *Declare* that Chippewas (and related 1825-26 treaty beneficiaries) individually, and collectively as historic Bands, have a right to invite guests to their various waters and lands associated public properties, and that invited guests both tribal and non-tribal have a right, if not intrinsic duty as invited guests to help defend endangered Chippewa property rights and interests. (ie. house/car on fire, help put fire out).

e.  *Declare* that Defendants individually and collectively knew or should have known their 5 Billion gallons of water grant was without the free, prior, informed consent[31] of the *Manoomin* and historic treaty bands and members of the *Chippewas of the Mississippi* and present day political successor tribal government at White Earth Reservation.

f.  *Declare* that Defendants are collectively and intentionally engaged in a pattern and practice of impermissibly infringing on and circumventing important Congressionally protected Chippewa treaty rights expressly protected under Public Law 280(b) whereby

> **Nothing in this section shall authorize the alienation**, encumbrance, or taxation **of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community** that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; **or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty**, agreement, or

---

[31] See United Nations Declaration on the Rights of Indigenous Peoples (UNDRIP) https://www.un.org/development/desa/indigenouspeoples/declaration-on-the-rights-of-indigenous-peoples.html

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 12.

==statute or with any regulation made pursuant thereto==; or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.

g. *Declare* Defendant state of Minnesota is willfully and intentionally engaged in civil rights deprivations against the Chippewas, other tribal members and invited guests, with regard to the free exercise and enjoyment of federally protected, treaty-recognized water property rights necessary to support the inherent and usufructuary property rights to hunt, trap, fish and gather *Manoomin* under: the 1855 Treaty (10 Stat. 1105); the 1837 Treaty (7 Stat., 536); the 1825 Treaty (7 Stat. 272) and the 1826 Treaty (7 Stat. 290); the American Indian Religious Freedoms Act; the First Amendment; Fourth Amendment; Fifth Amendment; Due Process Clause; and, Equal Protection Clause of the Fourteenth Amendment, which all violates 42 U.S. Code § 1983, for Civil action for deprivation of rights. Minnesota is interfering with the rights of tribes to make their own laws and to be ruled by them, by misappropriating 5B gallons of water and jeopardizing and endangering Manoomin and using police powers to enforce unjust state laws.

h. *Declare* intentional interference by the state of Minnesota with regard to the exercise of federally protected, treaty-recognized water property rights necessary to support the inherent and usufructuary property rights to hunt, fish and gather under the 1855 Treaty (10 Stat. 1105); the 1825 Treaty (7 Stat. 272) and/or the 1826 Treaty (7 Stat. 290); the First Amendment; Fourth Amendment; Fifth Amendment; Due Process Clause; and Equal Protection Clause of the Fourteenth Amendment, by arbitrarily, picking and choosing which Chippewa treaty tribes may enjoy and protect their usufructuary and water rights unmolested by DNR Conservation Officers.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 13.

i.  *Declare* the DNR has intentionally and knowingly violated the ***Rights of Manoomin*** by unilaterally granting 5 billion gallons of water, without official notice to tribes, without Chippewa consent, on and off White Earth Reservation in the Chippewa treaty ceded territories.  See Exhibit A. *Water Report: "What happens when the water goes down?"* By Renee L. Keezer, Pesticide Coordinator WE Natural Resources to Monica Hedstrom-Director, Director, WE Natural Resources dated July 16, 2021, RE: Minnesota Department of Natural Resources, *Amended Water Appropriation Permit #2018-3420, 5 billion gallons of water for Enbridge Line 3*, Summary and Comments.

j.  *Enjoin Defendants DNR to provide injunctive relief* to nullify Water Appropriation Permit No. 2018-3420 immediately to prevent further, continued waste of fresh water resources, both surface and groundwater, on reservation and across the ceded territories (necessary for the Manoomin to live and flourish; and so tribal members may enjoy their rights to harvest manoomin), by the Defendants Minnesota Department of Natural Resources (the "DNR") officials who unilaterally granted an increase to 5 billion gallons of water, up from a 0.5 billion gallons of water for total 10 fold increase, for Line 3, see https://files.dnr.state.mn.us/features/line3/decisions/04june2021-update-trench-watering-decisions.pdf Water Appropriation Permit No. 2018-3420 Enbridge Line 3 Replacement Project, dated June 4, 2021.

### *Background History*

1. The Chippewa and the White Earth Band have been involved in the pipeline regulatory process at the PUC for nearly 8 years.[32]   The DNR has continued to

---

[32] Most recently, *Bench & Bar* published 2 articles analyzing and questioning Minnesota Public Utilities Commission decision making on behalf of public's interest and environmental racism in

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 14.

disregard and disrespect parity recognition of Chippewa usufructuary rights in the 1855 ceded territory[33] on par with the 1837 and 1854 ceded territories DNR recognition of usufructuary rights.

---

the routing Line 3 pipeline through Chippewa territories in the May/June 2021 edition https://www.mnbar.org/resources/publications/bench-bar/issues/may-june-2021/2021/05/26/when-the-public-interest-isn-t-minnesota-s-approval-of-a-new-line-3 and see also part 2 in the July 2021 https://www.mnbar.org/resources/publications/bench-bar/2021/07/01/we-live-not-alone-a-legacy-of-environmental-racism

     In 2014, the White Earth Band of Ojibwe (the "Band") intervened and joined other Ojibwe (Chippewa) Anishinabe tribal governments and environmental intervenor groups (like Honor the Earth based on White Earth Reservation) in the Sandpiper (Bakken fracked) crude oil pipeline application and permitting process led and facilitated by Minnesota Department of Commerce (DOC) before the Minnesota Public Utilities Commission (PUC).  Later in 2014, when the PUC approved the Certificate of Need (CN) for Enbridge's Sandpiper (Bakken crude) pipeline project, without an Environmental Impact Statement (EIS), environmental intervenors appealed the PUC's decisions.  The Minnesota Court of Appeals ***reversed and remanded*** because

> [w]hen certificate of need proceedings precede routing permit proceedings for a large oil pipeline, the Minnesota Environmental Policy Act requires that an environmental impact statement be completed before a final decision is made on the certificate of need.

See *In re N.D. Pipeline Co.*, 869 N.W.2d 693 (Minn. App. Sept. 14, 2015) (Public Utilities Commission File No. PL-6668/CN-13-473, PL-6668/PPL-13-474).

     On August 4, 2015, Enbridge abandoned the Sandpiper Pipeline Project, a proposed 612-mile, $2.6 billion oil pipeline that would transport light crude oil from the Bakken Shale and Western Canada to Wisconsin.  Not long after Enbridge bought into Dakota Access Pipeline (DAPL), on September 3, 2016, during Labor Day weekend, the Dakota Access Pipeline brought in a private security firm when the company used bulldozers to dig up part of the pipeline route that contained possible burial sites and culturally significant artifacts; it was subject to a pending injunction motion [and] construction workers bulldozed a section of privately owned land the tribe had claimed as sacred ground, and when protesters trespassed into the area security workers used attack dogs which bit at least six of the protesters and one horse.  (See Dakota Access Pipeline protests - Wikipedia "*Standing Rock Special: Unlicensed #DAPL Guards Attacked Water Protectors with Dogs & Pepper Spray*". Democracy Now!. Archived from the original on June 13, 2019. Retrieved June 19, 2019. Standing Rock Special: Unlicensed #DAPL Guards Attacked Water Protectors with Dogs & Pepper Spray | Democracy Now!  Enbridge and the PUC filed an unsuccessful petition for review to the Minnesota Supreme Court for *In re N.D. Pipeline Co.*, 869 N.W.2d 693 (Minn. App. Sept. 14, 2015), which review was denied (Minn. Dec. 15, 2015) (A15-0016).

[33] In January 2016, the White Earth Band intervened and joined other Ojibwe (Chippewa) Anishinabe tribal governments and environmental intervenor groups (like Honor the Earth based

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 15.

2.  As part of Line 3 comments process, Monica Hedstrom, Director of Natural Resources for the White Earth Band did file Line 3 comments[34] on 5-17-2019 with the Minnesota DNR to inform them that

> As part of the Line 3 environmental review process the White Earth Band of Ojibwe helped develop and has adopted the Minnesota Chippewa Tribe's Anishinabe Cumulative Impacts Assessment as the White Earth Band's environmental risk and evaluation tool for the meaningful assessment of the short and long term impact of the abandonment of the existing Line 3 pipeline, as well as the impacts from tar sands extraction, greenhouse gases, climate change and additional, future pipeline abandonment from the decreased demand for crude oil.  The White Earth Band of Ojibwe did FIND that the Minnesota Chippewa Tribe's Anishinabe Cumulative Impacts Assessment is superior to the EIS that has been approved by the Minnesota PUC in examining the cumulative impacts from the proposed Line 3 project upon surface waters, groundwater, fish, wildlife, waterfowl, wild rice, plants, as well as the broader environmental consequences resulting from the proposed Line 3 project, which necessarily requires prohibiting the Line 3 Pipeline Replacement, new route corridor for the replacement pipeline across the 1855 ceded territory in violation of White Earth Band of Ojibwe and 1855 Treaty Authority established codes, laws

---

on White Earth Reservation) in the Line 3 (tar sands) crude oil pipeline permitting process led and facilitated by Minnesota Department of Commerce (DOC) before the Minnesota Public Utilities Commission (PUC).  When the White Earth Band filed its motions to intervene in Line 3, the Deputy Commissioner of Minnesota Department of Natural Resources wrote Feb. 5, 2016, to Ms. Heydinger, Chair, Minnesota Public Utilities Commission, Re: In re Application of Enbridge Energy, MPUC Docket No. PL-9/CN-14-916 saying in part that

> the DNR is, however, concerned about any ruling the Public Utilities Commission (PUC) might make regarding the Band's claim that it has usufructuary rights in the 1855 ceded territory in the context of addressing the Band's request to intervene in these proceedings.   A PUC decision to permit the Band to intervene in these proceeding premised on claimed usufructuary rights could have legal implications reaching well beyond these proceedings.  The DNR, therefore, requests that if the PUC permits the Band to intervene it do so using its discretionary authority without addressing the Band's claim that it has usufructuary rights in the 1855 ceded territory.

See copy of DNR letter attached as Exhibit B.
[34] See letter to DNR Comm. Strommen dated 5-17-2019 from Monica Hedstrom, Director of Natural Resources for the White Earth Band attached as Exhibit C.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 16.

and customs required consent as co-owners[, concluding that further consultation will be necessary.  If you have any questions or need of further information about Rights of Manoomin and consent, please call on me at 218-935-2488.

3.  White Earth and Red Lake filed comments with the Minnesota Pollution Control Agency (MPCA) with regard to the 401 Clean Water Act April 10, 2020, by letter to Commissioner Laura Bishop, Minnesota Pollution Control Agency, 520 Lafayette Road North St. Paul, Minnesota 55155-4194, Re: *Clean Water Act Section 401 Permitting for Enbridge Line 3 Project [and] Tribal Water Rights and Environmental Jurisdiction Comments*[35], requiring free, prior, informed consent from the Chippewas of the Mississippi and White Earth Band of Ojibwe.  The Administrative Law Judge (ALJ) for the contested case hearing dismissed tribal water rights arguments before the contested case proceeding was conducted because he *found* that tribal water rights are based on federal law and declared that

> 3. The Red Lake-White Earth Petition identifies two issues for a contested case hearing. The first issue is: Whether the MPCA may apply the provisions of the Clean Water Act to impacted Indian tribes.
>
> 4. The MPCA finds that the first issue raises a question of law that is not appropriate for a contested case hearing. The petitioners allege that the Clean Water Act does not apply to Indian tribes, which is a question of statutory interpretation. As a result, the first issue does not satisfy the criteria for a contested case.
>
> 5. The second issue raised in the Red Lake-White Earth Petition is: Whether Congress exempted waters rights from the 1953 jurisdictional grant under Public Law 280 to all states, including Minnesota, and, if so, whether the 401 Certification violates the water rights of Chippewa Tribes.

---

[35] See copy attached as Exhibit D.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 17.

6. The MPCA finds that the second issue raises a question of law that is not appropriate for a contested case hearing. ==The issue turns on questions of water rights under federal law, including Indian treaty rights. As a result, the second issue does not satisfy the criteria for a contested case.==

See https://www.pca.state.mn.us/sites/default/files/Enbridge-Line-3-CCH-order.pdf MPCA ALJ Order dated 6-3-20.

See also comments submitted to the PUC by the 1855 Treaty Authority with regard to Sandpiper, Line 3 and decommissioned pipeline clean-up and removal.[36]

4. The Mn DNR did NOT hold a contested case proceeding with regard to 401 Clean Water Act 401 permits for Line 3.  Instead the DNR took phone comments at virtual hearings during the Covid-19 pandemic and the DNR did state[37] *at item 11* that

> The Project would also cross wetlands and streams not covered by DNR licenses or permits. These wetland and stream crossings are regulated by the USCOE Clean Water Act section 404 permit and the MPCA Clean Water Act section 401 Water Quality Certification.

---

[36] See https://mn.gov/eera/web/project-file?legacyPath=/opt/documents/34079/Public%20Comments%201%20to%20A.pdf
[37] See https://files.dnr.state.mn.us/features/line3/decisions/cross-public-land-decision.pdf FINDINGS OF FACT, CONCLUSIONS AND ORDER by Barb Naramore, DNR Deputy Commissioner License for Utility to Cross State Lands No. ULND010332 Enbridge Line 3 Replacement Project 11-12-2020.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 18.



5. The DNR License for Utility to Cross State Lands No. ULND010332 Enbridge Line 3

Replacement Project responded to Tribal comments about public lands at section

### i. Comments Received from The 1855 Treaty Authority, the Red Cliff Band of Superior Chippewa, and Honor the Earth and DNR Response

25. The 1855 Treaty Authority commented that the Project will cross state forests where Band members hunt, fish, trap and gather. ***DNR Response:*** The license would not prevent Band members from hunting, fishing, and gathering in areas crossed by the pipeline. Further, as described below, **the project would not cause pollution, impairment or destruction that would interfere with hunting, fishing or gathering.** Enbridge is required to comply with comprehensive restoration and revegetation requirements under the EPP, which are designed to restore impacts from construction.

(Id. at section i, item 25)(Emphasis added).

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 19.

6.  Both White Earth and Red Lake as federally recognized tribal governments and as long time intervenors to the Line 3 PUC permitting process sought a *Stay of Construction* pending appeals at the Minnesota Court of Appeals, so that intervening Tribes could exercise their appeal rights under Minnesota state law before construction.  Minnesota State Senator John Marty wrote a letter to the PUC dated Dec. 3, 2020 (for the Dec. 4 PUC hearing) pointing out that

> granting a stay of construction allows the PUC to acknowledge that others have valuable perspectives and should be allowed their day in court. To date, the perspectives of the Red Lake and White Earth Nations, who have rights to treaty lands through which this new corridor will run, have not been taken into account. In the Certificate of Need, the Commission omitted discussion of treaties from the order, determining that while the ALJ report considered them, the PUC did not need to [, citing] Footnote 18 of the September 2018 order states: "For example, the ALJ Report included a section discussing the treaties between the federal government and the Native American sovereign nations located in Minnesota. The Commission concludes that this discussion is not necessary to the Commission's decision, and therefore does not adopt these findings."

See copy of Sen. Marty letter attached as Exhibit E.  The PUC denied the stay.[38]

7.  The White Earth Band has participated in a variety of appeals in the Minnesota Courts of Appeals with other Tribes and environmental parties.  There remains presently an appeal about the 401 Clean Water Act (CWA) permit issued by the MPCA at the Minnesota Courts of Appeals.  Oral arguments were held and an order is most likely still 30 plus days away.

---

[38] See *Minnesota regulators decline to halt Line 3 construction, Utility commissioners vote down motion from tribal nations seeking to stop the pipeline project from proceeding*, by Matthew Guerry, Dec. 4, 2020, https://www.duluthnewstribune.com/news/government-and-politics/6787895-Minnesota-regulators-decline-to-halt-Line-3-construction

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 20.

8. The White Earth Band is party with Red Lake and environmental parties challenging the 404 CWA permits issued by the United States Army Corps of Engineers (USACE) in Federal District Court, D.C. Circuit, for not following the National Environmental Policy Act (NEPA) and not doing an EIS etc.  Briefing just concluded. The same *Lorax question* is being asked about the USACE in Federal Court.

9. During the pendency of the EIS process by the PUC and the 401 CWA permitting by the MPCA and MDNR permitting, Enbridge's water appropriation need was approximately 510.5 million gallons for the entire Line 3 pipeline project.

10. On June 4, 2021, the MDNR issued Water Appropriation Permit No. 2018-3420 Enbridge Line 3 Replacement Project, dated June 4, 2021.  The order[39] first states

> Pursuant to the requirements of Minn. Stat. § 103G.271, Enbridge applied for and was issued four separate water appropriation permits as part of its proposed Line 3 Replacement Pipeline Project ("Project"). The permits issued seek to appropriate water for (1) hydrostatic testing and horizontal directional drilling, (2) trench and construction dewatering, (3) dust suppression, and (4) construction dewatering near the Gully 30 calcareous fen. These Findings of Fact only address Enbridge's water appropriation permit amendment for trench and construction dewatering ("Amendment"). The other three water appropriation applications and initial construction dewatering application were addressed in separate findings and have been issued permits.

11. DNR Water Appropriation Permit No. 2018-3420 does not follow Gov. Walz Executive Order 19-24 and does *not* included affected Tribes as eligible to file a *demand a hearing* and instead only allows

---

[39] See https://files.dnr.state.mn.us/features/line3/decisions/04june2021-update-trench-watering-decisions.pdf Water Appropriation Permit No. 2018-3420 Enbridge Line 3 Replacement Project, dated June 4, 2021.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 21.

the applicable municipality, watershed district or soil and water conservation district may file a demand for a hearing on the Amendment in accordance with Minnesota Statute § 103G.311, subd. 5 and Minnesota Rule 6115.0670, subp. 3, within 30 days after mailing or electronic transmission of notice of this Order."

12. During a June 22, 2021 Tribal Executive Committee (TEC) meeting of the Minnesota Chippewa Tribe, MCT members requested that the TEC attempt to seek rescission of the 5 billion gallons of water appropriation[40] for Line 3 until actual consultation occurred under Gov. Walz Executive Order 19-24.

13. The DNR declined to rescind the new 5 billion gallons of water permit at the meeting and subsequently on July 14th the White Earth Tribal government and citizens traveled to the Minnesota State Capitol supported by Line 3 Water Protectors to call on Biden and Walz to rescind 5B water and pipeline permits. Tribal members and water protectors urged President Joe Biden and Gov. Tim Walz to listen to Indigenous nations in northern Minnesota who are opposed to the pipeline, which would cross near reservation land and through waterways.[41]

14. Because of drought and frac-outs[42] from drilling under the headwaters of the Mississippi River[43], the White Earth Band served on Enbridge[44] a cease and desist

---

[40] See TEC Pres. Chavers letter to Gov. Walz dated 6-22-2021 regarding wild rice and drought attached as Exhibit F.

[41] See Line 3 protesters call on Biden, Walz to rescind pipeline permits By: Sarah Mearhoff, Jul. 15, 2021, https://www.grandforksherald.com/news/government-and-politics/7112669-Line-3-protesters-call-on-Biden-Walz-to-rescind-pipeline-permits)

[42] See https://www.youtube.com/watch?v=udQ2jGpqwZk *Line3 Project - Mississippi River Headwaters Sampling* 7/28/21. Video by Lucas Mulliken regarding the suspicious conditions at the Mississippi River near the Enbridge Line 3 Horizontal Directional Drilling site in the Headwaters. Clearwater County, Minnesota.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 22.

order for 48 hours from the White Earth Band to hold healing ceremonies for the Mississippi river and all the animal and plant inhabitants that rely on the clean water.

15. This action seeks declaratory and injunctive relief with regard to *exclusive water rights* of the *Chippewas of the Mississippi* as provided by White Earth Band of Ojibwe Res. 001-21-056, requiring free, prior, informed consent under express and Treaty-guaranteed water property rights, reserved water rights, priority, first-in-time and riparian rights and based on the *Winter's Doctrine* ground and surface water rights necessary to sustain *Manoomin*, the animals and plants of the upper Mississippi watershed for the people and culture of the sovereign, pan Chippewa Nation,

---

[43] See https://www.youtube.com/watch?app=desktop&v=fzT4cQYuZ7s  *Breaking at the Willow River Enbridge drilling construction operations hits an aquifer,* July 6 2021, Video by Keri Pickett/Honor the Earth, Breaking at the Willow River: Enbridge drilling construction operations hit an aquifer. What you see is drilling mud. The yellow booms are to stop it from flowing downstream. It is called a frack out.
[44] See https://www.youtube.com/watch?v=XxywMbxp3q8 Lakeland Public TV News

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 23.



expressed and retained throughout 44 treaties including the 1825, 1826, 1837, 1842, 1854 and 1855 Treaties with the United States government.  May the Chippewa have a mighty flood of justice, an endless river of righteousness like an ever-flowing stream and such other relief the Court deems just and proper.

### *Jurisdiction*

16. Jurisdiction is invoked under the White Earth Reservation Business Committee, White Earth Band of Chippewa Indians Resolutions Resolution Nos. 057-10-008 the *Ceded Territory Conservation Code of the 1855 Treaty Tribes*, 001-19-009 *Rights of Manoomin* Ordinance, 001-19-010 *Rights of Manoomin Code*, 019-21-002 adopting *Off Reservation ceded territory jurisdiction* and adoption of 1855 Treaty Authority

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 24.

Resolution 2018-01 for the *Right to Travel, Use and Occupy Traditional Lands and Waters Code* and the 1855 Treaty Authority Resolution 2018-05 for the *Rights of Manoomin Code*, as part of the laws of the White Earth Band of Ojibwe and the Chippewa's *Winter's Doctrine* for necessary quality and quantity of surface and groundwater to support the primary treaty foods of Manoomin (wild rice), fish and maple which all require abundant, clean freshwater.

17. Jurisdiction is also invoked under the American Indian Religious Freedom Act (AIRFA) (wherever wild rice or *Manoomin* exists), 42 U.S.C. § 1996; Public Law 83-280 (18 U.S.C. § 1162(b), 28 U.S.C. § 1360(b & c)),   42 U.S.C. § 1983 and 42 U.S.C. § 1988 for deprivation of federal and treaty civil rights and federal statutes protections by the DNR with the exercise of  federally protected, treaty-recognized water property rights, and defense of, necessary to support the inherent and usufructuary property rights to hunt, fish and gather under the 1855 Treaty (10 Stat. 1105); the 1825 Treaty (7 Stat. 272) and the 1826 Treaty (7 Stat. 290); the First Amendment; Fourth Amendment; Fifth Amendment; Due Process Clause; and, Equal Protection Clause of the Fourteenth Amendment.

*Venue*

18. Venue is proper  pursuant to White Earth Band of Chippewa Indians Judicial Code, Title 1, Courts, Ch. II Jurisdiction, section 1(j) which provides that

> The Court shall have jurisdiction to hear all actions arising under any code, resolution or ordinance enacted to protect, preserve, or regulate the rights reserved for Chippewa people in treaties negotiated with the United States government regarding off-reservation resources. The Court shall also have

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 25.

jurisdiction to hear all actions arising under any code, resolution or ordinance enacted to conserve, manage, or protect the resources utilized by the Chippewa people, regardless of whether such code, resolution or ordinance contemplates conservation, management or protection within or without the boundaries of the Reservation.

(See https://whiteearth.com/assets/files/judicial/codes/judicial.code.pdf);

19. Foundation for jurisdiction and venue are also supported by WERBC Resolution Nos. 057-10-008 the *Ceded Territory Conservation Code of the 1855 Treaty Tribes*; 001-19-009 *Rights of Manoomin Ordinance*; 001-19-010 *Rights of Manoomin Code*; and 019-21-002 adopting *Off Reservation ceded territory jurisdiction*, including 1855 *Rights of Manoomin* and 1855 *Rights to Travel, Use and Occupy Traditional Lands and Waters code*.

### *Parties*

20. MANOOMIN, or wild rice, possesses inherent rights to exist, flourish, regenerate, and evolve, as well as inherent rights to restoration, recovery, and preservation. These rights include, but are not limited to, the right to pure water and freshwater habitat; the right to a healthy climate system and a natural environment free from human-caused global warming impacts and emissions.  Manoomin is considered by the Anishinaabe people to be a gift from the Creator or Great Spirit and continues to be an important staple in the diets of native peoples for generations, is a central element of the language, culture, heritage, migration stories and history of the Anishinaabe people, and is an integral part of the wetland ecosystems and natural communities of

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 26.

our traditional lands and waters. Manoomin is also an indicator[45] species in the ecosystem also struggling to survive climate change.

21. WHITE EARTH BAND OF OJIBWE (or White Earth Reservation Business Committee) (WERBC) the White Earth Reservation Business Committee is the duly elected governing body of the White Earth Reservation pursuant to Article VI, Section 1, of the revised constitution of the Minnesota Chippewa Tribe, as amended, and organized under Section 16, of the Act of June 18, 1934 (48 Stat. 984), ) and therefore has the responsibility and authority to provide for the safety, health and welfare of its tribal members on and off reservation. https://whiteearth.com/home?p=1

22. MICHAEL FAIRBANKS, is the duly elected Chairman of the White Earth Band and is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the

---

[45] See https://www.wpr.org/indicator-plant-wild-rice-struggles-survive-changing-climate; Manoomin, A Cultural And Nutritional Staple For Thousands Of Years, Faces Wide Range Of Threats, By Mary Kate McCoy Wisconsin Public Radio, March 2, 2020. Manoomin, or wild rice, has been a spiritual, cultural and culinary staple for Wisconsin tribes for thousands of years. But experts estimate it's lost nearly half of its historic range and say climate change is likely the greatest threat it's ever faced. Those who work with manoomin know how sensitive the native, annual plant is, and warn it's an indicator species of climate change. In this series, WPR is exploring how the state can adapt to and mitigate the affect climate change is having on some of Wisconsin's most iconic foods.
See also https://data.glifwc.org/manoomin/pdf/Manoomin.Stewardship.Plan.draft.[2019-08-15].pdf
See also *U.S. Army Corps of Engineers Upper Mississippi River Headwaters Bemidji to St. Paul, Final Integrated Reservoir Operating Plan Evaluation and Environmental Impact Statement 2009* at https://www.bestofdocument.com/pdf/upper-mississippi-river-headwaters-bemidji-to-st-paul-integrated-reservoir-operating-plan-evaluation/ The responsible lead agency is the U.S. Army Corps of Engineers; the St. Paul District has the lead in preparation of this Integrated Reservoir Operating Plan Evaluation and Environmental Impact Statement. The U.S. Forest Service is a cooperating agency.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 27.

various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and is responsible for the health, safety and welfare of tribal members and defending the Manoomin, the waters, and Chippewa treaty rights.

23. LEONARD 'ALAN' ROY is the duly elected Secretary-Treasurer of the White Earth Band and is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and is responsible for the health, safety and welfare of tribal members and defending the Manoomin, the waters, and Chippewa treaty rights.

24. RAYMOND AUGINAUSH is the duly elected District 1 Representative of the White Earth Band and is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and is responsible for the health, safety and welfare of tribal members and defending the Manoomin, the waters, and Chippewa treaty rights.

25. KATHY GOODWIN is the duly elected District 2 Representative of the White Earth Band and is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 28.

the United States government, and is responsible for the health, safety and welfare of tribal members and defending the Manoomin, the waters, and Chippewa treaty rights.

26. CHERYL 'ANNIE' JACKSON is the duly elected District 3 Representative of the White Earth Band and is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and is responsible for the health, safety and welfare of tribal members and defending the Manoomin, the waters, and Chippewa treaty rights.

27. TODD JEREMY THOMPSON is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

28. DAWN GOODWIN is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 29.

29. NANCY BEAULIEU is an adult person and member of Minnesota Chippewa Tribe, enrolled with the Leech Lake Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

30. WINONA LADUKE is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.  LaDuke was designated *Guardian of the Shell River*[46] at the July 9, 2019, meeting of the 1855 Treaty Authority.  LADUKE is also executive director of Honor the Earth.

31. PATRICIA "ALEX GOLDEN-WOLF" OSUNA is an adult person and member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

---

[46] See *Women of the Shell River*, 7-15-2021 https://www.youtube.com/watch?v=nIK25Z2qSaA

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 30.

32. JUSTIN KEEZER is an adult person and member of Minnesota Chippewa Tribe, enrolled with the Leech Lake Band, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

33. TANIA AUBID is an adult person and member of Minnesota Chippewa Tribe, enrolled with the Mille Lacs Band of Ojibwe, and is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.[47]

34. SIMONE SENOGLES is an adult person and member of Red Lake Band of Chippewa Indians (https://www.redlakenation.org/), and is a beneficiary of the signatories of the various 44 Chippewa treaties, including but not limited to the 1825, 1837, 1863 and 1854 Treaties with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

35. GINA (PELTIER) EELE is an adult person and member of Turtle Mountain Band of Chippewa Indians (https://tmchippewa.com/), and is a beneficiary of the signatories of

---

[47] See *Tania Aubid Water Protector*  https://www.youtube.com/watch?v=k472LVjq7TE

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 31.

the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

36. TARA WIDNER is an adult person and whose mother was an enrolled member of Minnesota Chippewa Tribe, enrolled with the White Earth Band, and would be considered a Descendant on reservation, but off-reservation is a beneficiary of *Chippewas of the Mississippi* signatories of the various 44 Chippewa treaties, including but not limited to the 1855 Treaty with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.

37. TARA HOUSKA is an adult person and citizen of Couchiching First Nation, and is a beneficiary of the various Chippewa treaties, including but not limited to the 1825 and 1826 Treaties with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Chippewa treaty rights.  Tara Houska is an environmental and Indigenous rights attorney and advocate, land defender, founder of the Giniw Collective, and a leader of the efforts to stop Line 3.

38. JAMIE "JAIKE SPOTTED-WOLF" WORTHINGTON is an adult person and citizen of Mandan, Hidatsa and Arikara Nation, also known as the Three Affiliated Tribes https://www.mhanation.com/ and Fort Peck Assiniboine & Sioux Tribes Fort Peck

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 32.

Assiniboine & Sioux Tribes (fortpecktribes.org) , and is a beneficiary of the *1825 Treaty with the Sioux and Chippewa, Sacs and Fox, Menominie, Ioway, Sioux, Winnebago, and a portion of the Ottawa, Chippewa, and Potawattomie, Tribes*[48] with the United States government, and has been charged with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Sioux and Chippewa treaty rights.

39. SHANAI MATTESON is an adult person and non-Indian citizen resident of Minnesota, is an invited guest by the Chippewa to our public properties, land and water, has been charged with Trespass based state laws, along with many other similarly situated non-Indians, by the State of Minnesota for participation in defending the Manoomin, the waters, knowing DNR actions are contrary to Chippewa treaty rights.

40. ALLEN RICHARDSON is an adult person and citizen of citizen resident of Minnesota, is an invited guest by the Chippewa to our public properties, land and water, has been charged with Trespass based on state laws, along with many other similarly situated non-Indians, by the State of Minnesota for participation in defending the Manoomin, the waters, knowing DNR actions are contrary to Chippewa treaty rights.

41. THE MINNESOTA DEPARTMENT OF NATURAL RESOURCES (DNR) is an administrative subdivision of the state of Minnesota, responsible for managing

---

[48] See http://ioway.nativeweb.org/history/treaty1825.htm

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 33.

Minnesota's natural resources according to the Constitution and the law.  DNR is the agency which is charging and arresting Chippewa Tribal members with Trespass by the State of Minnesota for participation in defending the Manoomin, the waters, and Sioux and Chippewa treaty rights.  https://www.dnr.state.mn.us/

42. SARAH STROMMEN is the Commissioner of the DNR with the responsibility of managing only those resources over which she has lawful authority, by promulgating and enforcing DNR regulations through the employees and resources of the DNR, which does not include federally guaranteed, Treaty-recognized usufructuary property that is reserved to the Chippewa people. She is named in her official and her individual capacity and acted under color of law and in disregard of the federal treaty and civil legal rights of Chippewa Water Protectors.

43. RANDALL DODEEN is the Ecological and Water Resources, Conservation Assistance and Regulation Section Manager, who issued the *Findings of Fact, Conclusions and Order of Commissioner* for the *Amendment to Water Appropriation Permit 2018-3420* on June 4, 2021.  He is named in his official and his individual capacity and acted under color of law[49] and in disregard of the federal treaty and civil legal rights of Chippewa Water Protectors.

44. BARB NARAMORE, DNR Deputy Commissioner issued the *License for Utility to Cross State Lands No. ULND010332 Enbridge Line 3 Replacement Project* 11-12-

---

[49] See https://files.dnr.state.mn.us/features/line3/decisions/04june2021-update-trench-watering-decisions.pdf Water Appropriation Permit No. 2018-3420 Enbridge Line 3 Replacement Project, dated June 4, 2021.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 34.

2020.  She is named in her official and her individual capacity and acted under color of law and in disregard of the federal treaty and civil legal rights of Chippewa Water Protectors. (See *DNR State Lands for Line 3 map* at item 11, on page 18 *supra*).

45. DNR *Conservation Officers* named JOHN and JANE DOEs are named in their official and individual capacities and acted under color of law and in disregard of the federal legal rights of Chippewa and other Water Protectors.

### *The Incidents Giving Rise to the Complaint*

46. According to *Findings of Fact, Conclusions and Order of Commissioner* for the *Amendment to Water Appropriation Permit 2018-3420* on June 4, 2021, the permit amendment for Line 3 relates solely to the appropriation of water for construction dewatering of the pipeline corridor. Enbridge was issued permit no. 2018-3420 on December 8, 2020 for a total of 510.5 million gallons of water and requested an increase of that volume through this amendment for a total volume of 4,982,768,568 (5 Billion) gallons. A multitude of other permits and regulatory requirements will also apply to the Project prior to and during construction. Enbridge has completed 185.6 miles of installation out of the 330 miles total in Minnesota (56%), and has completed 136 waterbody crossings out of the total 227 waterbody crossings (60%). According to the amendment request memo from May 12, 2021, as of June 1, 2021 Enbridge will have appropriated 479,173,822 million gallons through trench dewatering.

47. Enbridge submitted a permit amendment request on January 26, 2021. Enbridge submitted a $150 check covering the amendment permitting fee in accordance with

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 35.

the administrative rule for permit amendments. On May 12, 2021, Enbridge submitted a revised Amendment request based on comments received from MPCA and DNR staff during the Request for Comments Period described below. DNR's decision on Water Appropriation Amendment Permit No. 2018-3420 (the "Permit") is based on the May 12, 2021 revised submittal.

48. On May 14, 2021 Randall Dodeen contacted Monica Hedstrom, WE Natural Resources Director for a May 27, 2021, by email for a tribal participation meeting scheduled for May 27, 2021.  Renee Keezer, Pesticides Coordinator for WE Natural Resources participated in the one-time meeting.  See *Water Report "What happens when the water goes down?"* by Renee Keezer dated attached as Exhibit A.

49. On June 22, 2021, the TEC sent a letter to Governor Walz to rescind the Amended Water Appropriation until government-to-government consultation as provided under E.O. 19-24 had occurred.  Minnesota DNR Commissioner declined the TEC request.

50. The stream flow of the Mississippi River coming off Blandin dam in Grand Rapids is very low and at least 3 feet below water marks of the river at the dam.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 36.



51. The stream flow downstream is insufficient to hold back tributaries of the upper Mississippi to support Manoomin (wild rice) habitats over many miles of rivers and lakes where Chippewa Treaty beneficiaries harvest Manoomin.  Water levels have dropped during this extreme drought period impacting the growth, harvest and reseeding of Manoomin.

52. The Minnesota DNR knew in December 2020, that this permit request to amend the 500 Million gallons permit to 5 Billion had submitted by Enbridge. The Minnesota DNR did not notify the natural resource directors of tribes, NOR Tribal leaders EVER

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 37.

officially, about this permit until May 14, 2021, by email. See *Water Report "What happens when the water goes down?"* Exhibit A.

53. When Renee Keezer checked back with Dodeen at DNR on June 9 for status on the permit, DNR informed her it was issued the week before. (See Email exchanges DNR and Keezer May 27, 2021 to June 9, 2021 attached as Exhibits G and H).

54. Here, Minnesota Governor Walz's Executive Order 19-24 explains that

> Meaningful and timely consultation between the State of Minnesota and the Minnesota Tribal Nations will facilitate better understanding and informed decision making by allowing for collaboration on matters of mutual interest and help to establish mutually respectful and beneficial relationships between the State and Minnesota Tribal Nations.

See https://mn.gov/governor/assets/2019_04_04_EO_19-24_tcm1055-378654.pdf

55. The DNR planned to avoid meaningful and timely consultation with the tribes waiting for five (5) months until May 27, and acted unilaterally on June 4, 2021, and issued the permit for 5 billion gallons, ten times the original permit. The tribes had no time to evaluate the impact of these withdrawals on the watersheds and wild rice. It also appears DNR was intentionally authorizing extraction of good, clean ground water to avoid other dewatering and cross-contamination issues. This is not meaningful and sufficient notification, especially when notification was avoided for months and not given directly to Tribal leaders.

56. Plaintiffs' usufructuary property rights to gather wild rice and other aquatic plants from the public waters in the 1855, 1854 and 1837 Treaty Territories, as well as other usufructuary property rights, are capable of repeated deprivation, by Defendants

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 38.

public declarations of the intent to do so, at least with respect to the 1855 Treaty Territory and the unilateral 5 billion gallon appropriation by DNR.

57. These violations by Defendants are capable of repetition and misappropriation has not been stopped.

## Claim I
### Federal-Treaty Rights Supremacy v. State Regulation
### (Minnesota Department of Natural Resources)

58. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

59. The claims of Defendants to ownership[50] of wild rice (Manoomin), wild plants and animals in the public waters and on the public lands of the 1855, 1854 and 1837 Treaty Territories, with respect to members of the Minnesota Chippewa Tribe, are contrary to the federal Treaty-recognized usufructuary property rights to hunt, fish and gather those wild plants and animals for their own subsistence.

60. Under color of law, Defendants statutory claims to ownership of public waters, wild rice, wild plants and animals vis-à-vis beneficiaries of the 1855 Treaty, the 1825 and 1826 Treaties with the United State government violate federal statutes 10 Stat.1165, Apr. 7 1855;  7 Stat. 272, Aug. 19, 1825; and, 7 Stat. 290 , Aug. 5, 1826, on their face.

61. Defendants state statutory ownership claims are in direct contravention to the federal Treaty-recognized usufructuary property interests established in the Chippewa Treaties, ratified by the Senate, and memorialized in the Federal Code with respect to

---

[50] See https://www.revisor.mn.gov/statutes/cite/84.091

Manoomin _et al_, v. Mn/DNR Comm. Strommen _et al_
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 39.

the 1855 Treaty Territory as interpreted by *Minnesota v. Milles Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999).

### Claim II
### Due Process-Usufructuary Property Takings in the 1855 Treaty Territory
### (Minnesota Department of Natural Resources and Commissioner Landwehr)

62. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

63. The claims of Defendants to ownership of wild plants and animals in the public waters and on the public lands of the 1855 Treaty Territory, under color of law, are contrary to the federal 1855 Treaty-recognized usufructuary property rights to hunt, fish and gather those wild plants and animals for their own subsistence, memorialized in the Federal Code. Treaty with the Chippewa, Feb. 22, 1855, 10 Stat., 1165, Ratified Mar. 3, 1855, Proclaimed Apr. 7, 1855. Art. 2.

64. Defendants state statutory claims to ownership of wild plants and animals vis-à-vis beneficiaries of the 1855 Treaty, the 1826 and 1825 Treaties with the United States has resulted in game, fish, wild ricing and other regulations that have prevented, and are preventing the exercise of Plaintiffs various Treaty-recognized usufructuary property rights in the 1855 Treaty Territory.

65. Under color of law, Defendants enforcement of above state regulations constitute a taking of federal treaty-recognized usufructuary property without Due Process or just compensation, in violation of the Fourteenth Amendment of the Constitution of the United States.

### Claim III
### Equal Protection vis-à-vis 1837 and 1854 Treaty Beneficiaries

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 40.

**(Minnesota Department of Natural Resources and Commissioner Landwehr)**

66. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

67. Defendants have acknowledged the validity of the treaty-recognized usufructuary property rights in the 1837 Treaty Territory, and 1854 Treaty Territory[51], which the Minnesota DNR is obligated to recognize since 1999, 1993 and 1988 respectively.

68. The holding in *Minnesota v. Milles Lacs,* as clearly stated by Justice O'Connor made plain these usufructuary rights had not been abrogated by the 1855 Treaty. *Minnesota v. Mille Lacs Band,* at 195-96.

69. Defendants refused to apply the same standard to the application to 1855 Treaty Territory, to the detriment of thousands of members of the Minnesota Chippewa Tribe in the 1855 Treaty Territory.

70. In so doing, Defendants violated Plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, compared to members of Chippewa Bands located in the 1854 and 1837 Treaty Territories without rational basis and results in civil rights deprivations by Defendants.

## Claim IV
### Fourth Amendment and Due Process Violations
### (Minnesota Department of Natural Resources, Commissioner Strommen and assistant Commissioners Dodeen and Naramore)

71. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

72. Plaintiffs water, 5 billion gallons of water, as property has been seized without proper Notice and Opportunity to be heard damaging federally Treaty-recognized

---

[51] https://www.revisor.mn.gov/statutes/2019/cite/97A.157/pdf

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 41.

usufructuary property rights on public lands and waters within the 1855 Treaty Territory and, as such, were seized and unjustly taken from the Manoomin, the ecosystems, lakes, rivers and aquifers.

73. After the water as seized by DNR officials to give to Enbridge Line 3, Plaintiffs explained the direct interference with lawfully were exercising Treaty-recognized usufructuary rights to hunt, fish and gather but were cited and nonetheless, which will resulted in pecuniary loss, present and future damages for manoomin harvesters.

74. In so doing, Defendants violated Plaintiffs Fourth Amendment rights to be free from arbitrary and capricious seizure of 5 billion gallons of water and to be free from seizure of the tribal and personal water property rights, as part of federal Treaty-recognized usufructuary property rights. (PL 280 (b), 18 U.S.C. § 1162(b) and 28 U.S.C. § 1360 (b&c)) and 44 Chippewa Treaties with the United States.

### Claim V
### First Amendment Religious and Cultural Practices
### (Minnesota Department of Natural Resources, Commissioner Strommen and assistant Commissioners Dodeen and Naramore)

75. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

76. Plaintiffs religious and cultural practices in the 1855 Treaty Ceded Territory and beyond are subject to the American Indian Religious Freedom Act (AIRFA), 42 U.S.C. § 1996 and, as such, are protected by the First Amendment to the Constitution of the United States.

77. To the extent that unlawful Minnesota limitations of usufructuary property rights of the Chippewa people to fully engage in hunting, fishing and gathering to support their

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 42.

religious, ceremonial and cultural activities, state of Minnesota hunting, fishing and gathering regulations in the 1855 Treaty Ceded Territory violate the First Amendment protections of Plaintiffs, guaranteed by the First Amendment and American Indian Religious Freedom Act (AIRA).

**Claim VI**
**Failure to Train**
**(Minnesota Department of Natural Resources, Commissioner Strommen**
**and Assistant Commissioners Dodeen and Naramore)**

78. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

79. Defendants Minnesota DNR and DNR Commissioner Strommen and other DNR Conservation Officers defendants, acting under color of law, failed to provide adequate information and training to DNR staff, including Defendants Assistant Commissioners Dodeen and Naramore, in the lawful status of federal Treaty-recognized Chippewa usufructuary property rights in the 1855 Treaty Territory, to avoid unlawful enforcement of DNR regulations on tribal members.

80. The DNR was on notice, no later than the *Minnesota v. Milles Lacs* opinion in 1999, that all U.S. Chippewa Treaties in Minnesota retained Treaty-recognized usufructuary property rights to hunt, fish and gather in all public waters and lands in all of Minnesota, north of the 1825 Treaty boundary with the Lakota people.

81. DNR Commissioner Strommen is on NOTICE about Off-reservation tribal court jurisdiction and Rights of Manoomin by letter to the 1855 Treaty Authority stating

> Thank you for your correspondence dated June 1, 2021 (White Earth off reservation tribal court And Chippewa treaty protected uses of public lands) and June 7, 2021 (Protection of wild rice, wild rice waters

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 43.

of the Chippewas' of the Mississippi; Shell River and Rights of Manoomin). We appreciate the interest of the 1855 Treaty Authority in the issues raised in your letters.

See DNR Comm. Strommen letter dated 7-6-21 to Frank Bibeau, Executive Director of

1855 Treaty Authority attached as Exhibit I.

## Claim VII
### Violations of Rights of Manoomin
### (Minnesota Department of Natural Resources, Commissioner Strommen and Assistant Commissioners Dodeen and Naramore)

82. Plaintiffs re-allege preceding paragraphs as if fully alleged again, here.

83. Defendants Minnesota DNR and DNR Commissioner Strommen and other DNR defendants (named or John Doe conservation officers), acting under color of law, are impermissibly interfering with the rights of tribal members to maintain their spiritual relationship with manoomin, free of DNR violating treaty recognized usufructuary and water property rights, giving away 5B gallons of surface and groundwater, without adequate and legal notice to affected tribes and members or consent.

84. The DNR was on notice, no later than the *Minnesota v. Milles Lacs* opinion in 1999, that all U.S.-Chippewa Treaties in Minnesota retained Treaty-recognized usufructuary property rights to hunt, fish and gather in all public waters and lands in all of Minnesota, north of the 1825 Treaty boundary with the Lakota people.

85. DNR Commissioner Strommen has acknowledged NOTICE about White Earth exercising Off-reservation tribal court jurisdiction and *Rights of Manoomin* by letter to the 1855 Treaty Authority responding

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 44.

Thank you for your correspondence dated June 1, 2021 (White Earth off reservation tribal court And Chippewa treaty protected uses of public lands) and June 7, 2021 (Protection of wild rice, wild rice waters of the Chippewas' of the Mississippi; Shell River and Rights of Manoomin). We appreciate the interest of the 1855 Treaty Authority in the issues raised in your letters.

See DNR Comm. Strommen letter dated 7-6-21 to Frank Bibeau, Executive Director of

1855 Treaty Authority attached as Exhibit I.

### Remedies

1. *Declaratory Relief* that

   a. *Manoomin*, or wild rice, within all the Chippewa ceded territories possesses inherent rights to exist, flourish, regenerate, and evolve, as well as inherent rights to restoration, recovery, and preservation.  These rights include, but are not limited to, the right to pure water and freshwater habitat; the right to a healthy climate system and a natural environment free from human-caused global warming impacts and emissions.

   b. Chippewa treaty beneficiaries, and in particular the *Chippewas of the Mississippi* have exclusive surface and groundwater rights under the *Winter's Doctrine* to the public waters and aquifers, which necessarily requires *free, prior, informed consent*[52] from the Chippewa before unilateral state permitting may be granted for commercial purposes.

---

[52] See also  https://www.un.org/development/desa/indigenouspeoples/declaration-on-the-rights-of-indigenous-peoples.html The *United Nations Declaration on the Rights of Indigenous Peoples* (UNDRIP) was adopted by the General Assembly on Thursday, 13 September 2007

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 45.

c. The Chippewas possess the Creator-given right to harvest manoomin, and protect and save manoomin seeds, including protecting the waters necessary for Manoomin to flourish within the 1855 ceded territory and beyond.

d. Chippewa tribal members possess both a collective and individual right of sovereignty, self-determination, and self-government, which shall not be infringed by other governments or business entities claiming the right to override our rights.  This shall include the right to enforce this law free of interference from corporations, other business entities, governments, or other public or private entities.  These rights pre-date treaties and a derived from the individually held, usufructuary property rights protected by U.S. Constitutional due process, as part of the supreme law of the land.

e. Other Tribal members party to Treaties with the Chippewa, with or without the United States, (like Council of the Three Fires https://native-americans.com/council-of-three-fires-confederacy/), which pre-date the U.S. and other colonial countries occupation in North America.

86. *Injunctive Relief* to

a. Effectively and immediately *rescind* all the DNR water appropriation permits issued for Line 3 in this case, for commercial purposes, and in particular, Water Appropriation Permit No. 2018-3420 Enbridge Line 3 Replacement Project, dated June 4, 2021.

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 46.

b. Establish Surface and Ground Water Property and Joint Permitting Agreements with the State of Minnesota for the 1855 Treaty Territory, to prevent any further unilateral, surface and ground water permitting by the state of Minnesota DNR.

Dated: August 4, 2021

_____/s/ Frank Bibeau_____
Frank Bibeau, Tribal Attorney
Joe Plumer, Tribal Attorney
For the Manoomin,
White Earth Band of Ojibwe,
*Chippewas of the Mississippi,*
Individual tribal members, non-Indian Water protectors and the 1855 Treaty Authority

Manoomin *et al*, v. Mn/DNR Comm. Strommen *et al*
Complaint for Declaratory and Injunctive Relief
August 4, 2021 draft, page 47.